(No. 62964.—

EILEEN HEINRICH, Special Adm'r, v. PEABODY IN-
TERNATIONAL CORPORATION *et al.* (San-Dee
Building Maintenance Company, Appellant, v. Brook-
shore Lithographers, Inc., Appellee).

*Opinion filed June 29, 1987.*

GOLDENHERSH, J., took no part.

Wildman, Harrold, Allen & Dixon, of Chicago (Craig
M. White and Thomas E. Patterson, of counsel), for ap-
pellant.

Sandra Young, Edward C. Purcell and Joseph T.
Scally, of Purcell & Wardrope, Chtd., of Chicago, for ap-

pellee.

JUSTICE MILLER delivered the opinion of the court:

Eileen Heinrich brought an action in the circuit court of Cook County to recover for the death of her husband, Frank Heinrich, who was killed in an industrial accident on the premises of his employer, Brookshore Lithographers, Inc. Among those named as defendants in Mrs. Heinrich's action were San-Dee Building Maintenance Company and one of its employees, who allegedly activated a trash compactor while Heinrich was inside it, causing his death. San-Dee brought the instant third-party action against Brookshore, seeking both indemnity and contribution. The circuit judge granted Brookshore's motion to strike the indemnity count. The appellate court initially held that it did not have jurisdiction of San-Dee's appeal of that ruling (110 Ill. App. 3d 1198 (order under Supreme Court Rule 23 (87 Ill. 2d R. 23))), but this court reversed (99 Ill. 2d 344), and on remand the appellate court upheld the dismissal of San-Dee's indemnity count (139 Ill. App. 3d 289). We allowed San-Dee's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The plaintiff's husband was killed on December 11, 1979, at Brookshore's plant in Northbrook, Illinois. The plaintiff's second amended complaint alleged that Ignacio Ayala, an employee of San-Dee who was performing janitorial work at the plant on the day in question, activated the trash compactor while the plaintiff's decedent was working inside it. As grounds for recovery from San-Dee and Ayala, the plaintiff alleged that San-Dee was negligent in hiring, training, and supervising Ayala, and that Ayala was negligent in his operation of the machine. The plaintiff also sued, on grounds of negligence and strict liability, the companies that manufactured, sold, installed, and maintained the machine.

San-Dee's third-party complaint against Brookshore was in two counts, one for indemnification and the other for contribution; the contribution count is not at issue in this appeal. In the indemnity count, San-Dee alleged that Ayala was subject to Brookshore's control at the time of the occurrence, that San-Dee had lent Ayala to Brookshore, that Ayala was Brookshore's employee and agent and acting under its orders, and that Brookshore had the right and duty to control and supervise Ayala. San-Dee also alleged in the indemnity count specific acts of negligence on Brookshore's part, and Brookshore's breach of a duty to provide workers in its plant with safe equipment and a safe worksite.

The trial judge granted Brookshore's motion to strike the first count of San-Dee's third-party complaint. The trial judge believed that implied indemnity had been replaced by contribution as a result of this court's decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, and the legislature's subsequent enactment of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1985, ch. 70, pars. 301 to 305) (Contribution Act). In addition, the trial judge concluded that San-Dee's allegations regarding Ayala's status as a loaned servant would be more appropriate as an affirmative defense to the underlying wrongful death action than as a basis for recovery from Brookshore.

Initially the appellate court dismissed, on jurisdictional grounds, San-Dee's appeal of the order striking its indemnity count. In an earlier appeal of the matter, however, this court reversed the appellate court's decision and held that the appeal was proper. Also in the previous appeal, this court considered arguments by Brookshore concerning the substance of San-Dee's indemnity claim. The court construed the indemnity count of San-Dee's third-party complaint as actually setting forth two

separate theories of recovery: one was for "implied indemnity under the common law alleging a pre-tort relationship and active negligence on the part of Brookshore," and the other was based on the allegations "that the allegedly negligent employee (Ayala) was a servant loaned by San-Dee to Brookshore and thus Brookshore was responsible for his conduct." (99 Ill. 2d 344, 347.) With respect to the first theory, the court considered, but did not decide, Brookshore's argument that there could be no basis here for finding that it was actively negligent and San-Dee passively negligent. That argument presupposed the continued recognition of actions for implied indemnity, but because the parties had not addressed the issue, the court remanded the action to the appellate court so that the question could be presented there. The court also considered Brookshore's argument that San-Dee's loaned-servant theory was better understood as an affirmative defense to the underlying action than as a basis for a third-party action. The court noted that the loaned-servant rule was a principle of agency law rather than a ground for indemnity. Still, the court believed that allowing San-Dee to use the loaned-servant theory as a basis for a third-party action was preferable to requiring San-Dee to present the theory as an affirmative defense without also being able to bring the borrowing employer into the case as a codefendant.

On remand, the appellate court ruled that the Contribution Act had entirely supplanted the doctrine of implied indemnity. (139 Ill. App. 3d 289, 296.) After considering at length the relationship between implied indemnity and contribution, the appellate court concluded that contribution provided a full and adequate remedy to a third-party plaintiff and that the continued recognition of a cause of action for implied indemnity would be inconsistent with one of the purposes of the Contribution Act, that of encouraging settlements. Also,

the appellate court believed that San-Dee's loaned-servant allegations stated a cause of action for contribution and therefore instructed San-Dee to replead the theory in that form.

As a preliminary matter, San-Dee and Brookshore agree that the appellate court erred in holding that the loaned-servant allegations should be repleaded here as a contribution claim. The appellate court apparently assumed that San-Dee's loaned-servant theory was a species of indemnity and would therefore fall with the demise of that doctrine. In the previous appeal, however, this court recognized San-Dee's loaned-servant theory as distinct from its claim for indemnity. Under that view, then, the loaned-servant theory was found to provide an independent basis for a third-party action, and therefore it would not be affected by the curtailment or elimination of implied indemnity.

Brookshore also contends that San-Dee's loaned-servant theory does not provide a logical basis for a third-party action and should be pleaded instead as an affirmative defense to the original action for wrongful death. In the previous appeal this court noted the imprecision of regarding San-Dee's loaned-servant allegations as a cause of action for indemnity: if the allegations were true, then San-Dee would owe no damages for which it would need to be indemnified. (99 Ill. 2d 344, 351.) Nevertheless, the court allowed San-Dee to maintain a third-party claim against Brookshore on a loaned-servant theory, reasoning that such a procedure would prevent the possibility of inconsistent results in successive actions against the lending and borrowing employers and would avoid an unnecessary dissipation of judicial resources. (99 Ill. 2d 341, 352.) This court is no less concerned now than in 1984 about the potential for inconsistent results and wasted resources, and upon reconsideration we do not believe that San-Dee should be allowed to use the

loaned-servant theory as the basis for a third-party action against Brookshore. San-Dee is free to assert the theory in the underlying action, and that will provide the more efficient resolution of the issue. If established, the loaned-servant allegations will defeat recovery by the plaintiff; if the theory fails, it cannot then serve as the basis for a third-party action against Brookshore.

In the previous appeal, this court characterized San-Dee's claim for indemnity as "alleging a pre-tort relationship and active negligence on the part of Brookshore." (99 Ill. 2d 344, 347.) The court remanded the action to the appellate court for consideration of the question whether implied indemnity still existed. After the appellate court's decision in this case, however, this court determined, in *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, that the active/passive distinction may no longer serve as the basis for an action under implied indemnity. To the extent that San-Dee's indemnity claim depends on the active/passive distinction, it would appear that it has been overtaken by other events. But *Allison* expressly did not decide the fate of other forms of implied indemnity, such as that based on vicarious liability, asserted here, or upstream indemnity in product liability actions (113 Ill. 2d 26, 27, 35), and San-Dee argues now that its claim for implied indemnity is actually one based on vicarious liability, a variety that, San-Dee asserts, survived *Skinner* and the Contribution Act (see *Jethroe v. Koehring Co.* (S.D. Ill. 1985), 603 F. Supp. 1200, 1204; *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 773-74; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 612-13; Appel & Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative and Judicial Cooperation*, 10 Loy. U. Chi. L.J. 169, 192-93 (1979); Comment, *Implied Indemnity in Illinois*, 17 Loy. U. Chi. L.J. 89, 107 (1985)). We do not de-

termine here whether that is the case, for we conclude that the action must fail for other reasons.

In support of recovery under a vicarious liability theory, San-Dee would apply the following example to the circumstances here:

> "3. A, a plumber, is sent by B, his master, to repair C's plumbing. C directs A to sever pipes entering C's land which C says are his. A, believing this to be true, severs the pipes. In fact, the pipes belong to D. B is required to make compensation to D therefor. B is entitled to indemnity from C." (Restatement of Restitution sec. 87, comment *a*, at 394 (1937).)

San-Dee contends that this case fits within the paradigm: San-Dee sent Ayala, one of its employees, to Brookshore, which directed and controlled Ayala's operation of the trash compactor, resulting in the death of the plaintiff's decedent. San-Dee concludes that it is entitled to indemnity from Brookshore.

In the example quoted above, the plumber is liable because of his trespass to or conversion of the other landowner's pipes; his employer's liability is based on *respondeat superior*. Both plumber and employer are entitled to indemnity from the customer, who issued the erroneous instructions. The quoted example is used in the Restatement of Restitution to illustrate the principle that "a master who would not be barred from indemnity because of his participation in a tort is not barred from indemnity if his servant or other agent was acting on his account as a participant in the transaction (see Illustration 3)." Restatement of Restitution sec. 87, at 393 (1937).

To sustain a claim for indemnification from Brookshore, San-Dee's theory here is that Ayala was acting at the direction of Brookshore when the accident occurred and that it was Brookshore's negligence and not Ayala's that caused the accident. But the ground asserted for

Ayala's liability in the original action is his negligence. Mrs. Heinrich's second amended complaint alleges two negligent acts by Ayala: that he "[c]arelessly and negligently failed to check if anybody was working on the compactor before activating it," and that he "[c]arelessly and negligently failed to take proper care and caution in the operation of the machine." If San-Dee's indemnification theory is correct, then Ayala was not negligent and there is no need for indemnity. If Ayala was in fact merely following the instructions of another and was not negligent for doing so, as San-Dee contends, then he was not negligent under the allegations stated in the Heinrich action. For these reasons, we do not believe that San-Dee has asserted a ground for implied indemnity here. (See *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 546; *Folkers v. Drott Manufacturing Co.* (1987), 152 Ill. App. 3d 58, 63-64; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 613.) Having also rejected San-Dee's alternative loaned-servant theory, we therefore conclude that count I of the third-party complaint failed to state a cause of action and was properly dismissed.

The judgment of the appellate court is affirmed in part and reversed in part, the judgment of the circuit court is affirmed, and the cause is remanded to the circuit court of Cook County for further proceedings.

> *Appellate court affirmed in part and reversed in part; circuit court affirmed; cause remanded.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.